IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SUSIE WHITING individually and on behalf of the ESTATE OF THERON DANIEL WHITING,<br><br>Plaintiff,<br>v.<br><br>RITE AID CORPORATION, a Delaware corporation, dba RITE AID PHARMACY; THRIFTY PAYLESS HOLDINGS, INC., a Delaware corporation, dba RITE AID PHARMACY; RITE AID LEASE MANAGEMENT COMPANY, a California Corporation, dba RITE AID PHARMACY; and THRIFTY PAYLESS, INC., dba RITE AID,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' [19] MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:12-cv-288 DN<br><br>District Judge David Nuffer |

Defendants Rite Aid Corporation, Thrifty Payless Holdings, Inc., Rite Aid Lease Management Company, and Thrifty Payless, Inc. (collectively "Rite Aid") filed a Motion for Partial Summary Judgment ("Motion") dismissing Plaintiff's claims relating to the second incident in the Amended Complaint[1] involving Sudafed. Plaintiff opposes the Motion. After carefully considering the parties' briefs and the relevant law, Rite Aid's Motion is DENIED.

## BACKGROUND

Plaintiff Susie Whiting ("Mrs. Whiting") alleges that Linda Smith ("Smith"), a pharmacist employed by Rite Aid, breached her duty to warn and give good advice about whether Ms. Whiting's husband could safely take Sudafed.[2] Plaintiff alleges that prior to Mr.

---

[1] Docket no. 2-2, filed in the Third Judicial District Court in and for Salt Lake County on February 3, 2012, and removed to this court on March 26, 2012.

[2] Amended Compl. at 4, docket no. 2-2.

Whiting taking the Sudafed, Mrs. Whiting called Rite Aid, her regular pharmacy, and spoke with Smith about whether Mr. Whiting could take Sudafed safely.[3] Plaintiff claims that Smith discussed Mr. Whiting's medical history with Mrs. Whiting and approved Mr. Whiting's use of Sudafed.[4] During the alleged conversation[5] Mrs. Whiting did not mention that Mr. Whiting had previously suffered from "a little bit of prostate trouble."[6]

Smith denies that she ever had a telephone conversation with Mrs. Whiting about whether it was safe for Mr. Whiting to take Sudafed.[7] Smith also argues that even if the conversation did occur, she would not have recommended Sudafed to a customer, regardless of the customer's health.[8] Rite Aid contends that there was no evidence of Mr. Whiting's prostate problem in Rite Aid's prescription record.[9]

Mrs. Whiting alleges that based upon Smith's advice that it was safe, Mr. Whiting took one Sudafed pill. Subsequently, the Sudafed allegedly exacerbated symptoms of Mr. Whiting's "prostate trouble" and he suffered from difficulty urinating, bladder distension, and burst blood vessels in his bladder.[10] These problems necessitated the use of catheters, which required frequent hospital visits for multiple weeks, as well as two operations to close the blood vessels.[11]

---

[3] *Id*.

[4] *Id*.

[5] *Id*. at 5.

[6] Rite Aid's Mtn. for Partial Summary Judgment at 3, docket no. 13, filed May 23, 2013.

[7] Rite Aid's Mtn. for Partial Summary Judgment at 5, docket no. 13.

[8] Rite Aid's Mtn. for Partial Summary Judgment at 5, docket no. 13; Defendants' Memo. in Reply to Plaintiff's Memo. in Opp. to Mtn. for Partial Summary Judgment ("Reply Memo.") at 6, docket no. 19, filed July 8, 2013.

[9] Rite Aid's Mtn. for Partial Summary Judgment at 6, docket no. 13.

[10] Plaintiff's Memo. in Opp. of Defendants' Mtn. for Partial Summary Judgment at 2, docket no. 16, filed June 13, 2013.

[11] *Id*.

Alleged permanent nerve injury resulting from the bladder distension caused Mr. Whiting pain and debility for two years until he died from an unrelated illness.[12]

After Mr. Whiting's death, Mrs. Whiting sued Rite Aid alleging medical malpractice, *res ipsa loquitur*, and lack of informed consent arising from Smith's negligence and bad advice.[13] Rite Aid moves for partial summary judgment on Plaintiff's claims related to Mr. Whiting's consumption of Sudafed. Rite Aid argues that it is not liable for Mr. Whiting's injuries because (1) the pharmacist duty of care does not require giving adequate advice about non-prescription drugs and because (2) the learned intermediary doctrine shields pharmacists from liability for failure to warn. Mrs. Whiting opposes Rite Aid's Motion.

**Summary of Rite Aid's Arguments.**

Rite Aid argues that the pharmacist standard of care adopted by the Utah Supreme Court in *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*[14] includes neither a duty to warn of drug side effects, nor an obligation relating to nonprescription drugs.[15] According to Rite Aid, because Smith's duty of care mainly consisted of filling prescriptions correctly, and because Sudafed is not a prescription drug, Smith did not breach the pharmacist duty of care and Rite Aid cannot be liable for Mr. Whiting's injuries.[16] Rite Aid contends that imposing a duty upon a pharmacist regarding nonprescription drugs would "force customers to choose between consulting with their physician about every medication or attempting to make an educated decision on their own."[17] It appears that Rite Aid argues that a pharmacist is exempt from any and all liability when giving

---

[12] *Id*.

[13] *See* Whiting's Amended Complaint, docket no. 2-2, filed March 26, 2012.

[14] 2003 UT 43, 79 P.3d 922.

[15] *Id.* at 8-9.

[16] *Id.* at 8.

[17] Reply Memo. at 11, docket no. 19.

advice to customers about nonprescription drugs, even when the pharmacist dispenses bad advice.

Rite Aid also argues that even if the duty of care extends to nonprescription drugs like Sudafed, the learned intermediary doctrine shields Rite Aid from liability because Smith was not Mr. Whiting's physician and did not have access to him or his medical history.[18] Rite Aid contends that because Smith was not a physician, she was not in a position to exercise any discretion over Mr. Whiting's medical needs and care.[19]

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law."[20] When considering a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to" the nonmoving party.[21] The nonmoving party must "present more than a scintilla of evidence in favor of his position."[22] A genuine dispute exists only when the evidence would allow a reasonable jury to find in favor of nonmoving party.[23]

## Discussion

As discussed above, the parties dispute material facts, particularly about whether Mrs. Whiting phoned Smith about whether it was safe for Mr. Whiting to take Sudafed. This dispute would normally preclude summary judgment. But Rite Aid argues that even under Mrs.

---

[18] Rite Aid's Mtn. for Partial Summary Judgment at 11, docket no. 13.

[19] *Id.* at 12.

[20] Fed.R.Civ.P. 56(a).

[21] *Matthews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011) (internal quotations omitted).

[22] *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kerber v. Quest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

Whiting's alleged facts, Rite Aid cannot be liable as a matter of law because a pharmacist has no duty regarding nonprescription drugs. Whether a duty exists is a question of law.[24] Rite Aid further argues that even if a duty exists, Rite Aid is protected from liability by the learned intermediary doctrine. Rite Aid's arguments fail.

**I.  Pharmacists Have a Duty.**

The Utah Supreme Court has not yet expressly stated whether a pharmacist may be liable for dispensing advice about nonprescription drugs. This court should analyze and evaluate Utah law to predict what the Utah Supreme Court would do when faced with this issue.[25]

The Utah Supreme Court has previously held that although "pharmacists are exempt from strict products liability in Utah, [they] may still be liable for claims of professional malpractice or negligence."[26] "[A] pharmacist has a generally recognized duty to possess and exercise the reasonable degree of skill, care, and knowledge that would be exercised by a reasonably prudent pharmacist in the same situation."[27] Though this duty is "most commonly breached within the pharmacy profession by negligent packaging or dispensing of prescription drugs,"[28] the scope of that duty has not been specifically defined. That the duty is most "commonly breached" by negligently packaging or dispensing prescription drugs does not limit it to those two circumstances.

Utah law recognizes that pharmacists and pharmacies may give advice and recommendations to customers about nonprescription drugs. For example, the Utah Code defines "patient counseling" as "the written and oral communication by the pharmacist or pharmacy

---

[24] *See Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 18, 215 P.3d 152.

[25] *See Grynberg v. Total, S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008).

[26] *Schaerrer v. Stewart's Plaza Pharmacy Inc.*, 2003 UT 43, ¶ 34, 79 P.3d 922.

[27] *Id.* at ¶ 35.

[28] *Id.*

intern of information, to the patient or caregiver, *in order to ensure proper use of drugs…*"[29] The definition of "drug" includes "a substance other than food intended to affect the structure or any function of the body of humans…"[30] Nonprescription drugs are "drugs" as that term is used in the Utah Code.[31] "Practice of pharmacy" includes "providing information on *drugs* or devices, which may include advice relating to therapeutic values, *potential hazards*, and uses. . . ."[32]

Pharmacists in Utah clearly have duties regarding nonprescription drugs. If a pharmacist answers a customer's question and offers advice about nonprescription drugs, the pharmacist must advise and act in a non-negligent manner consistent with a reasonably prudent pharmacist's response to a customer's question about the safety of a nonprescription drug. And this question is inextricably tied to facts and needs expert testimony to establish the standard of care of a reasonably prudent pharmacist in this situation.[33]

Imposition of a duty regarding nonprescription drugs is consistent with Utah law and public policy. "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."[34] "A court determines whether a duty exists by examining the legal relationship between the parties, the foreseeability of the injury, the likelihood of injury, public policy as to which party can best bear the loss occasioned by the injury, and other general policy

---

[29] Utah Code Ann. § 58-17b-102(41) (emphasis added).

[30] Utah Code Ann. § 58-17b-102(24)(a)(iii).

[31] Utah Code Ann. § 58-17b-102(37)(a) ("'Nonprescription drug' means a drug which…").

[32] Utah Code Ann. § 58-17b-102(54)(g).

[33] *See Downing v. Hyland Pharmacy*, 2008 UT 65, ¶ 10, 194 P.3d 944.

[34] *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 19, 215 P.3d 152.

considerations."[35] "Legal duty, then, is the product of policy judgments applied to relationships."[36]

Policy judgments applied to the relationship between pharmacist and customer mandate that pharmacists have a duty to their customers. Pharmacists can avoid liability for failure to warn in the prescription drug context when they are viewed only as service providers – namely because the law restricts what they can "sell." A pharmacist can only "sell" what the customer's doctor has prescribed to the customer. In the prescription drug setting, pharmacists are not sellers because they do not market and sell prescription drugs to customers, and customers do not choose which prescription drugs they will purchase based upon the recommendations or advice of the pharmacist. For these reasons, the learned intermediary doctrine protects pharmacists from strict liability for failure to warn in the prescription drug setting, since the pharmacist is acting only as a service provider, and not an independent seller, in that context.

But nonprescription drug sales are not determined or limited by a physician's prescription. A customer may "shop" for a nonprescription drug, and a pharmacist may market and sell nonprescription drugs to customers without any input or advice from a medical doctor. If pharmacists offer advice and recommendations to customers about nonprescription drugs, pharmacists are less like service providers and more like sellers of any other product. They may market and sell nonprescription drugs and may offer advice about those nonprescription drugs, including whether they will interact with other drugs – both prescription and nonprescription alike. This advice has an independently powerful effect on the purchaser.

In a modern day pharmacy, where pharmacists serve as both "sellers" and service providers, if a pharmacy offers advice and recommendations about nonprescription drugs, and

---

[35] *Id*.

[36] *Id.*

that advice turns out to be contrary to what a reasonably prudent pharmacist would give in a similar situation, the pharmacy cannot reap the benefits of offering advice but then hide behind the learned intermediary doctrine to avoid the consequences if their advice is incorrect. This is especially so when pharmacies often hold themselves out to the public and the pharmacy's customers as experts on drugs – both prescription and nonprescription alike.[37]

A pharmacist has a duty to act in a manner consistent with a reasonably prudent pharmacist. Expert testimony is necessary to establish whether Smith breached this duty based upon the factual circumstances alleged.

## II. The Learned Intermediary Doctrine Does Not Apply.

The learned intermediary doctrine does not apply to shield a pharmacy or pharmacist from liability for failure to warn in the nonprescription drug context. In *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*,[38] the Utah Supreme Court extended the learned intermediary doctrine to pharmacists. But *Schaerrer* also makes clear that the learned intermediary doctrine only exempts pharmacists from strict liability for failure to warn of the risks associated with the use of prescription drugs.[39] The learned intermediary doctrine was later extended to protect pharmacists from negligent failure to warn claims, but the extension was again limited to the context of prescription drugs.[40]

Adoption of the learned intermediary doctrine with respect to pharmacists was based in part on the "unique set of relationships" among pharmacists, physicians, customers, and drug manufacturers in the prescription drug context. This unique relationship exists because "[b]oth

---

[37] Plaintiff's Memo. in Opp. of Defendants' Mtn. for Partial Summary Judgment at 14, docket no. 16.
[38] 2003 UT 43, 79 P.3d 922.
[39] *Id.* at ¶ 22.
[40] *See Downing*, 2008 UT 65, ¶ 7.

8

manufacturers and pharmacists are limited in their ability to distribute FDA-regulated drugs because neither has direct access to the patient."[41] "Only through a physician's prescription may any prescription drug sale occur."[42]

Over the counter drugs, like Sudafed, are FDA-regulated drugs.[43] But the Utah Supreme Court could not have intended to include *all* FDA-regulated drugs in its holding, as evidenced by its adoption of the reasoning of the Pennsylvania Supreme Court in *Coyle v. Richardson-Merrell, Inc.*:

> Unlike the marketing system for most other products, the distribution system for *prescription drugs* is highly restricted. Pharmacists, as suppliers, do not freely choose which "products" they will make available to consumers in any given instance, and patients, as consumers, do not freely choose which "product" to buy. Physicians exercising sound medical judgment act as intermediaries in the chain of distribution, preempting, as it were, the exercise of discretion by the supplier-pharmacist, and, within limits, by the patient-consumer.[44]

The Utah Supreme Court concluded:

> So long as a pharmacist's ability to distribute *prescription drugs* is limited by the highly restricted, FDA-regulated drug distribution system in this country, and a pharmacist cannot supply a patient with *prescription drugs* without an intervening physician's prescription, we will not impose a duty upon the pharmacist to warn of the risks associated with the use of prescription drugs.[45]

In Utah, the learned intermediary doctrine only shields pharmacists from failure to warn about prescription drugs. It has no application in the factually different context of nonprescription drugs. Because the issue in this case involves Smith's alleged advice regarding

---

[41] *Id.* at ¶ 22.

[42] *Id.*

[43] http://www.fda.gov/Drugs/DevelopmentApprovalProcess/HowDrugsareDevelopedandApproved/ucm209647.htm (last visited June 6, 2014).

[44] *Schaerrer*, 2003 UT 43 at ¶ 22 (emphasis added).

[45] *Id.* (emphasis added).

9

the safety of Sudafed, a nonprescription drug, Rite Aid is not protected by the learned intermediary doctrine.

**ORDER**

IT IS HEREBY ORDERED that Rite Aid's Motion for Partial Summary Judgment is DENIED.

Dated June 24, 2014.

BY THE COURT:

David Nuffer
United States District Judge